**SAMUEL GOLDWYN, Inc., et al. v. UNITED ARTISTS CORPORATION.**

No. 7374.

Circuit Court of Appeals, Third Circuit.

June 29, 1940.

Max D. Steuer, of New York City, for appellants.

George Wharton Pepper, of Philadelphia, Pa., and Robert H. Richards, of Wilmington, Del., for appellee.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

BIGGS, Circuit Judge.

The appellee, United Artists Corporation, on September 2, 1935, entered into a distribution contract with London Film Productions, Limited, an English producing corporation, and with Alexander Korda, a motion picture director and a resident of London, England. The contents of this contract need not be detailed here. It is sufficient to state that it provided for the purchase of a unit of common stock of United by Korda and London Film, and required London Film to deliver and United to accept from London Film for distribution and to distribute a certain number of films produced, directed or supervised by Korda for a period of ten years commencing upon the date of the contract.

On July 22, 1936, the appellant, Samuel Goldwyn, Inc., entered into a distribution contract with United, the performance of which by Goldwyn, Inc., was guaranteed by the appellant, Samuel Goldwyn, by a guarantee contract. Under the terms of this contract Goldwyn, Inc., was required to deliver and United was required to accept for distribution and to distribute a certain number of films, produced, directed and supervised by Goldwyn. It should be noted that the period of time covered by this contract was made coextensive with the distribution contract between United, London Film and Korda, to which we have just referred, the contract between Goldwyn, Inc., Goldwyn and United requiring the delivery of films and their acceptance for distribution for a period of ten years commencing as of September 12, 1935. The thirteenth paragraph of this contract provided that if United granted any other producer more favorable terms for the distribution of pictures than were granted to Goldwyn, Inc., by the contract, then the distribution contract between United and Goldwyn, Inc., should be deemed to be amended to the extent necessary to give Goldwyn, Inc., terms as favorable as those included in any other contract. However, before Goldwyn, Inc., and Goldwyn could be induced to enter with United into the contracts of distribution and guarantee another contract, known as the inducing contract, was required by Goldwyn, Inc., and Goldwyn to be executed by United. This inducing contract recites specifically that Goldwyn, Inc., is unwilling to enter into the distribution contract and Goldwyn individually is unwilling to enter into the guarantee contract unless the inducing contract be executed. It goes on to provide that United must enter into substantially identical distribution contracts with Pickford Corporation, The Elton Corporation, and with Charles Chaplin, these distribution contracts, other than the Chaplin contract (Chaplin acting as an individual and without the agency of a corporation) to be guaranteed as Goldwyn guaranteed the performance of Goldwyn, Inc., respectively by Mary Pickford and Douglas Fairbanks.

The inducing contract specifically provided that United agreed that no amendment should be made or permitted in any of the provisions of the contracts of distribution except as provided in paragraph 13 of each or in the contracts of guarantee as entered into by United with Pickford Corporation, The Elton Corporation, London Film, Charles Chaplin, with Korda, Mary Pickford or Douglas Fairbanks, and that United would not waive the strict performance and observance of any of the provisions of the distribution and guarantee contracts referred to without in each instance obtaining first the express written consent of Pickford Corporation, The Elton Corporation, Charles Chaplin, Goldwyn, Inc., Mary Pickford, Douglas Fairbanks, and Samuel Goldwyn. The contemplated contracts of distribution and guarantee were actually entered into by United with the other corporations and individuals named in this paragraph, upon July 22, 1936, and Pickford Corporation, Samuel Goldwyn, Korda and London Film, The El-

ton Corporation and Charles Chaplin on July 22nd became and have remained the owners of all of the outstanding capital stock of United. Inducing contracts substantially similar to that between Goldwyn, Inc., and United were entered into between United, Pickford Corporation, Mary Pickford, The Elton Corporation, Douglas Fairbanks, and Charles Chaplin, and at a later date United entered into an inducing contract also with London Film and Korda.

All of the foregoing appears from the amended complaint filed in this cause. Goldwyn, Inc., and Goldwyn have sued United under the Declaratory Judgment Act, Section 274d of the Judicial Code, 28 U.S.C.A. § 400, and seek to have the court below declare that United has breached the terms and provisions of the inducing contract entered into by it with Goldwyn and Goldwyn, Inc. They seek also to have their contracts of distribution and guarantee declared to be terminated by reason of alleged, breaches by United of the inducing contract. These breaches fall into two categories: first, modifications by United without the consent of Goldwyn, Inc., of certain· provisions of the distribution contracts which United had with London Film and with The Elton Corporation; second, the waiver by United of the strict performance and observance by London Film and Korda of provisions of the contract of September 2, 1935, between United and London Film and Korda.

United filed a motion to dismiss the complaint because of the failure of the appellants to join Korda, London Film, Douglas Fairbanks and The Elton Corporation. The court below found that Korda and London Film were indispensable parties and necessary parties, that the Declaratory Judgment Act was designed to put an end to controversies but to allow the appellants to proceed with the suit at bar without joinder of the parties named would breed new litigation. The amended complaint was dismissed and the appeal at bar followed.

It will be observed that the corporations and individuals which we have referred to above have bound themselves by contracts with United in such a way that they have effected a community of interest in the distribution of moving pictures. It is apparent that a failure upon the part of United to insist upon strict adherence to the provisions of the distribution or guarantee contracts by any party might affect the distribution of the motion pictures produced by the other parties to the other contracts with United. It is obvious that the decree which the appellants seek cannot be granted unless the court examines. the distribution contracts of London Film and The Elton Corporation in the light of the circumstances and reaches the conclusion that these contracts have been modified or breached by what United did or permitted London Film or The Elton Corporation to do. Such a conclusion however would not constitute an adjudication of the rights of United, London Film and The Elton Corporation under their respective distribution contracts. An adjudication is a judgment, the entry of a decree by a court in respect to the parties in a case, and London Film, The Elton Corporation, Korda and Fairbanks are not parties to the suit at bar. Even if they could be made such there is no relief which Goldwyn, Inc., or Goldwyn might have as to them or any of them so far as any breach or modification of their respective contracts of distribution or guarantee with United are concerned. Goldwyn, Inc., and Goldwyn must look solely to United. Any relief to which the appellants are entitled must come from United.

Much has been written as to what are indispensable, necessary, proper or merely formal parties to a suit. We refer to the decision of the Circuit Court of Appeals for the Ninth Circuit in State of Washington v. United States, 87 F.2d 421, where the cases relating to this topic are collected and classified. Rule 19 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c throws some light on this question. Subsection (a) of Rule 19, relating to "Necessary Joinder", provides that persons possessed of a "joint interest" shall be made parties and joined on the same side as plaintiffs or defendants. Subsection (b), relating to "Effect of Failure to Join", provides that when persons "who are not indispensable, but who ought to be parties if complete relief is to be accorded between those already parties, have not been made parties and are subject to the jurisdiction of the court as to both service of process and venue and can be made parties without depriving the court of jurisdiction of the parties before it, the court shall order them summoned to appear in the action. The court in its discretion may proceed in the action without making such persons parties, if its jurisdiction over them as to either service

of process or venue can be acquired only by their consent or voluntary appearance or if, though they are subject to its jurisdiction, their joinder would deprive the court of jurisdiction of the parties before it; but the judgment rendered therein does not affect the rights or liabilities of absent persons."

We conclude that the "interest" referred to both in Rule 19 and the decided cases [1] is one which must be directly affected legally by the adjudication. Not only this, but we go further and state that the interest of the absent party must be cognizable, [2] that is to say within the jurisdiction of the court or the power given to the court by law to adjudicate the controversy. We are of the opinion that this is so if the absent party is to be deemed either indispensable or necessary, but if the absent party's interest be "joint" with that of either the plaintiff or defendant, the absent party is then an indispensable party and must be joined as either a party plaintiff or a party defendant in accordance with subsection (a). If the absent party's legal interest is cognizable in the suit but is not joint with that of the plaintiff or the defendant, and he should be joined in order to afford complete relief to those already parties, then he is a necessary party and must be joined if subject to the process and within the venue of the court. If he is not subject to the process and within the venue of the court, then under the conditions laid down in the last sentence of subsection (b) the court may or may not, within its discretion, proceed to judgment as to the parties before it.

Though the relief sought by the amended complaint is pursued under the Declaratory Judgment Act, none the less the provisions of Rule 19 apply to this kind of action as well as to any other civil proceeding. Subsection 1 of the Act, 28 U.S.C.A. § 400 (1), specifically states that the courts of the United States shall have the power "* * * to declare rights and other legal relations of any interested party petitioning for such declaration * *". Legal rights may only be adjudicated under the Declaratory Judgment Act precisely as only legal rights may be adjudicated in any other form of civil action. That this is the case is made abundantly clear by the

opinion of the Supreme Court in Ætna Life Insurance Company v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 464, 81 L.Ed. 617, 108 A.L.R. 1000, in which the Chief Justice stated, "A 'controversy' in this sense [in the sense of the Declaratory Judgment Act] must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. * * * Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages."

Applying these principles to the case at bar, we conclude that though the suit at bar is one in which a declaratory judgment is sought, none the less London Film, The Elton Corporation, Korda and Fairbanks are neither indispensable or necessary parties for there is no justiciable controversy between them or any of them and the appellants, nor would the legal interests of the absent parties be affected by an adjudication in the case at bar. As a matter of law the interests of the appellants and those of the absent parties are neither adverse nor similar in the legal sense. They can be made neither parties plaintiff or defendant. Specifically the interests of the appellants are not joint with those of the absent parties. A community of interest has been created by agreement, but the rights and obligations of the respective parties to the contracts are severable and the interests of the parties outside of their several and respective contracts are not legal interests. Goldwyn, Inc., for example, cannot force United to bring a suit for breach of contract against London Film or

---

[1] See, also, Moore's Federal Practice, pp. 2134 et seq., and Borchard's "Declaratory Judgments", pp. 26-40.

[2] Some authorities use the word "justiciable" in this connection.

Korda and thereby compel an adjudication of that issue. Such controversies are not justiciable or cognizable in any suit which might be brought by Goldwyn, Inc., or Goldwyn against London Film or Korda.

It is apparent that if the appellee's views as to what constitute indispensable and necessary parties are to be accepted, not only must the parties named in the motion to dismiss be joined in the suit at bar but also all the persons or corporations heretofore named must be joined in any suit against United. Every person or corporation bound into the community of interest would be an indispensable or necessary party whether their legal rights would be legally affected by the adjudication or not. We consider this view unrealistic and one which would tend to limit the purposes and scope of the act in a way which Congress has not intended. Jurisdiction of parties to a controversy under the Declaratory Judgment Act differs not at all from jurisdiction of parties in any other civil suit. The remedy supplied by the Declaratory Judgment Act is merely a different remedy. In this connection we think it would be useful to analyze the three cases upon which the learned District Judge relied so that we may point out our reasons for arriving at different conclusions than those expressed by him.

In Northern Indiana R. Co. v. Michigan Central R. Co., 15 How. 233, 243, 244, 14 L.Ed. 674, the Supreme Court made plain that the controversy which it had before it arose out of conflicting railroad franchises making it necessary to direct an issue to try the title of the parties to certain lands in Indiana. There was an absent party, however, a company which had made a contract with the defendant to continue the railroad around the southern end of Lake Michigan, allegedly pursuant to the authority of one of the franchises. It was apparent that the interest of the absent party was a legal interest, cognizable in the controversy. Moreover, that interest was "joint" with that of the defendant with whom the absent party had the contract. The absent party was therefore indispensable within the meaning of subsection (a) of Rule 19.

In Commonwealth Trust Company v. Smith, 266 U.S. 152, 45 S.Ct. 26, 29, 69 L. Ed. 219, the Supreme Court had before it a controversy affecting the rights of certain settlers in Idaho to water rights. The water company had made substantially similar contracts with these settlers granting them rights in the water, each individual contract reciting that it was made by virtue of an earlier contract between the water company and the State of Idaho. The water supply proved insufficient; some settlers defaulted in their payments and a suit was brought to foreclose a general lien covering all water rights. The Supreme Court refused to permit the suit to proceed unless all persons claiming water rights by virtue of the contracts referred to were joined as parties. In this case the rights of the absent parties were legal rights, cognizable in the suit. The interests of the absent parties were not joint in fact but were joint in effect. The Supreme Court stated, "The bill sets forth the controversy respecting the water supply and does so for the purpose of having it determined. The controversy is not peculiar to the contracts sued on but reaches and affects all that are outstanding. The contracts, while several in form, are interdependent in substance and operation. All are effectively tied together by the contract between the state and the company, in virtue of which they were made, and by what they purport to do, which is to entitle their holders to participate on equal terms in the use of a common supply of water and to invest them with proportionate interests in the works by which the water is collected and conducted to the places of use." The Supreme Court affirmed the decree of the Circuit Court dismissing the bill. We conclude in the cited case that the interests of the absent parties were cognizable in the suit but were not "joint". They were necessary parties, however, if complete relief was to be afforded to those already parties to the suit and since they were subject to the process of the court and its venue, they were required to be joined if the suit was to be maintained, precisely as if subsection (b) had been in effect.

In Niles-Bement-Pond Company v. Iron Moulders' Union, Local No. 68, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145, the petitioner, the complainant below, filed a bill against the Niles Tool Works Company, several local labor unions and many of the striking employees of the Tool Company, alleging that the actions of these strikers interfered with the performance by the Tool Company of a manufacturing contract which the petitioner had made with it. The Tool Company had a contract with its striking employees, governing the condi-

tions of their employment. No case was stated or relief asked by the petitioner against the Tool Company. The petitioner owned the controlling stock interest in the Tool Company. The officers of the two companies were substantially identical and more than 95% of the business of the Tool Company was obtained by the petitioner, acting as its sales agent. As a matter of practice the petitioner made contracts for the Tool Company which it turned over to the latter, the petitioner remaining responsible for the performance of the contracts. Jurisdiction was sought in the lower court on the ground of diversity of citizenship and this was the only question which the Supreme Court was required to determine. It was held that the Tool Company was an indispensable party to the suit, the Supreme Court stating in its opinion, 254 U.S. at page 80, 41 S.Ct. at page 41, 65 L.Ed. 145, "Petitioner's claim of right, the validity of which we are not called upon to determine, is rested wholly upon the contract of the Tool Company with its employés, and the character and construction of that contract of employment must inevitably be passed upon in any decision of the case, and, obviously, if the petitioner should fail in such a suit as this, with the Tool Company not a party, any decree rendered would not prevent a relitigating of the same questions in the same or in any other proper court, and it would settle nothing." In the cited case it is obvious that the interest of the Tool Company in the contract of employment was cognizable in the pending suit and that its interest was at least "joint" with that of the petitioner. In fact we would conclude that the Tool Company was the substantial party in interest in the case, and that there was question if the petitioner was entitled to maintain the action at all. A more troublesome question would have arisen had a motion been made to dismiss the suit because the petitioner did not have the capacity to maintain the suit. We venture to surmise that this is what the Supreme Court had in mind when it referred to the petitioner's claim, stating, 254 U.S. at page 80, 41 S.Ct. 39, 65 L.Ed. 145, that the court was not called upon to determine the validity of that claim.

In our opinion the three cases cited may be distinguished from the case at bar. In two of them a cognizable legal interest of an absent party or absent parties would have been legally affected by an adjudication. In the last case cited, the joinder of a party defendant was questioned when in fact it was the real party in interest in the litigation. In the case at bar the absent parties possess no cognizable or justiciable legal interest which can be legally affected by an adjudication in the pending suit.

One point remains for determination. Despite the fact that the absent parties are neither indispensable or necessary and are without conflicting legal interests to be adjudicated in the controversy, should the court below in the sound exercise of its discretion have dismissed the amended complaint? The discretion to grant or refuse declaratory relief as was stated in Automotive Equipment, Inc., v. Trico Products Corporation, D.C., 11 F. Supp. 292, 295, "* * * is a judicial discretion, and must find its basis in good reason." For this reason it is subject to appellate review in proper cases. Ætna Casualty & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321, 324. The criteria must always be whether a declaratory judgment will clarify and settle the legal relations in issue and whether such a declaration will afford relief from the uncertainty and controversy giving rise to the proceeding. See Borchard, Declaratory Judgments, pp. 107–109. In our opinion both criteria were met by the record which the District Court had before it and in our opinion the learned District Judge should have granted declaratory relief.

It appears, however, from a motion to quash the appeal and its accompanying affidavit and exhibits filed in this court[3] that the appellants filed suit[4] in the District Court of the United States for the Southern District of New York against the appellee, London Film and Korda. Part of the relief sought in that suit is an injunction to restrain the appellee from interfering in any wise with the appellants' full and unrestricted distribution and exhibition of their moving pictures during a period up to September 2, 1945. It appears upon the examination of the complaint that an adjudication of the New York suit might or would require an adjudication of the issue as to whether United had breached its inducing contract with

[3] This motion was denied by this court on May 22, 1940, pursuant to agreement of counsel.

[4] The New York suit was filed February 15, 1940. The suit at bar was commenced upon April 11, 1939.

the appellants. Upon reaching the conclusion that the ends of justice would be best served by such a course, a court of the United States in its discretion may refuse declaratory relief because another court has jurisdiction in an executory or non-declaratory action of proceedings involving an issue identical with that involved in the suit for declaratory relief. Such a conclusion must be based upon sound reasons why under all the circumstances a non-declaratory or executory action is to be preferred over a suit for a declaration. See Borchard, Declaratory Judgments, p. 181 et seq.

Accordingly, the decree of the court below is reversed and the cause is remanded, with leave to receive evidence on behalf of the parties to the suit at bar relating to the New York action to the end that the court below, in the exercise of its discretion, may determine whether the amended complaint should be dismissed or declaratory judgment given.