29 C.C.P.A. (Patents)

### In re ROBERTSON.

#### Patent Appeals No. 4602.

Court of Customs and Patent Appeals.

April 27, 1942.

Kwis, Hudson & Kent, of Cleveland, Ohio, for appellant.

W. W. Cochran, of Washington, D. C. (Clarence W. Moore, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

After allowing four claims in appellant's application for a patent relating to a valve stem assembly for an inflatable rubber inner tube, the Primary Examiner of the United States Patent Office rejected the remaining claims, numbered 40, 41, 42, and 43. Upon appeal to the Board of Appeals, the decision of the examiner was affirmed. Appellant has appealed here from said decision of the board.

Claim 40 is illustrative of the involved subject matter and reads: "40. A valve stem for an inner tube for a pneumatic tire, said valve stem comprising a tubular rubber body and a relatively rigid tubular valve-part-receiving insert in said body, said insert having a projecting end of smaller diameter than the base end of said rubber body, said insert being of such size and form and being so fitted and secured by a bore engagement in the body as' to preserve the external conformation of the body, said body having a continuous unconfined surface compressible throughout its length including the portion inclosing said insert."

The references relied upon are: Mac-Spadden, 568,362, Sep. 29, 1896; Robuck, 633,106, Sep. 12, 1899; Griffin, 1,460,753, Jul. 3, 1923; Adams, 1,660,902, Feb. 28, 1928.

The invention disclosed in appellant's application relates to a valve stem for an inner tube for use with a pneumatic tire. His application discloses a flexible hose-like rubber valve stem reinforced with rubberized fabric. The reinforcement prevents distortion of the stem but allows it to be easily bent in any direction. A metal valve is secured to the outer end of the valve stem and is provided with integral locking flanges which engage the fabric and serve to hold the valve in place. In appellant's drawing the valve stem is shown in bent form and passing through openings in the rim and wheel. The decision of the board so clearly states the issues, most of appellant's contentions, and aptly applies the references to the various claims that it seems proper to quote extensively therefrom. In part it said (drawing numerals omitted) :

"The description in the original specification states on page 5:

" 'The rim is mounted as shown on a wheel through the agency of a metal felloe which has an opening in its sidewall to permit the valve stem to protrude therethrough.

" 'When the tire and tube are placed on the rim, the valve stem will be in a straight position or it may be bent at will to any position to assist in placing the tube and tire on the rim.

" 'The flexible stem can be bent to cooperate with a plurality of types of wheels and rims as is apparent.'

"The examiner has rejected all the claims as being unpatentable over Adams. In this patent is shown a valve stem made of flexible rubber reinforced by flexible fabric. A valve is inserted into the outer end of the stem and is held in place by means of screw threads and cement. A metallic ferrule is applied to the outer end of the stem and serves to effectively secure the valve within the valve stem. The description states that a ferrule is 'preferably' applied, this indicating that the ferrule might be omitted.

"Applicant objects to the Adams patent mainly on account of the presence of the ferrule which he argues will catch in the hole of the rim when the tire creeps about the rim after being deflated. He states that this will pull the valve stem from the tire. He also objects to the reference because the valve cap is of a diameter larger than the valve stem and argues that it will also catch in the hole in the rim.

"As pointed out above the patentee inferentially indicates that the ferrule may be omitted. Even though present it is shown to be so thin and to be pressed into the rubber stem that it could not catch in the hole in the rim. The hole in the rim

is shown to be quite large and will readily permit the stem and ferrule to pass. The cap also would evidently not catch in the hole any more than in applicant's device.

"The examiner has pointed out that this feature of construction of the parts whereby it permits the valve stem to be readily pulled through the hole in the rim was not mentioned in the application as originally filed. No dimensions of the parts were given. The only disclosure of any dimensions is in the drawing and it is not indicated that the drawing is made to scale. Applicant's only argument on this point is that the operation is inherent from what is shown in the drawing. If that is the only basis on which to predicate patentability, it is equally justifiable to consider the inherent operation of the structure shown in the drawings of the references. In the Adams patent the opening in the rim is relatively larger than in applicant's drawing. It appears that the valve stem and cap would more readily pass through this opening during the creeping of the inner tube than in applicant's device. This would be true whether the ferrule be present or absent as suggested by the patent. It is our view that the Adams patent is sufficient to meet the claims before us.

"Claims 40 and 41 also stand rejected on Griffin. Applicant objects to this reference because the wires are present. He alleges that they will catch in the opening of the rim. These wires are of small diameter and will be pressed into the rubber to such an extent that they will not obstruct the passage of the valve stem through the opening in the rim to any extent. Furthermore, the opening in the rim is shown to be of such a large size that it would not be possible for the wires to catch in it. We think that these claims are not patentable over Griffin.

"Claims 40, 41 and 42 also stand rejected on MacSpadden. Applicant objects to this reference because it shows a cap having a flange of larger diameter than the valve stem. The drawing shows the flange slightly larger than the diameter of the valve stem but we do not think that it would obstruct the passage of the valve stem through an opening in a wheel rim. The patent gives as much information about the specific dimensions of the cap as does applicant's specification. We think that this patent is a pertinent reference for these claims.

"During the prosecution, applicant has filed an affidavit setting forth that he made a test of his device prior to the filing of the application. Applicant cannot modify the original disclosure by referring to this affidavit. The original disclosure itself must be considered in determining what was originally shown and described. When so considered we find substantially no more in it than we find in the references cited."

Appellant in this court has outlined the issues to be decided and has earnestly urged that the holdings of the board are erroneous, especially with respect to its attitude toward affidavits referred to in its decision relating to certain inherent functions of certain features of the reference patents and applicant's disclosure. He states the issue as follows: "There are two questions to be decided. The first is, is the function of the valve stem pulling through the opening in the felloe and in the rim of the wheel inherent in applicant's construction? The second question is whether there is 'inherent' in the construction and assembly the function of the valve stem pulling through the opening in the rim structure, in the case of the MacSpadden and Robuck bicycle tires, and also whether, in the Griffin and Adams patent, the construction there delineated is such that inherently there will be a drawing in of the stem into the casing upon a diminution of pressure in the inner tube?"

The allowed claims define certain specific features of appellant's invention, while the rejected claims are broadly drawn to cover a vulcanized stem assembly which he describes in his application as comprising the assembly united to an unvulcanized inner tube by vulcanization or to a vulcanized inner tube by rubber cement. Appellant employs rubberized reinforcing patches underlying a comparatively thick pad of rubber stock, which overlies the base of the assembly.

Appellant's specification, as filed on October 3, 1929, points out that his device was intended to take the place of the old bent metal valve stem, to which there were several objections, among them being difficulty of insertion in the rim and felloe and its lack of adaptability for use on different kinds of rims or wheels. Nothing was said in the application as originally filed concerning the "creeping" tendency of inner tubes, which action, when metal valve stems were employed, brought about

damage to the tubes, nor did appellant therein mention the fact that his flexible structure would permit the stem to be pulled through the opening in the rim and thus avoid the stated injury. Appellant's chief contention here is that he has solved the problem arising from "creeping" and that his application shows that it is inherent in his device that the valve stem will, when the tube creeps, pass through the opening in the rim and thus avoid injury to the tube stem connection, and that it is equally inherent in the reference disclosures that this action will not take place.

The board pointed out the features of appellant's application emphasized by the applicant and commented on the fact that no dimensions of the parts were given in the application and that the only possible disclosure of dimensions of the parts which appellant contends solved the creeping problem, could be observed from the drawing. On this phase of the case the board stated, correctly, we think: "If that is the only basis on which to predicate patentability, it is equally justifiable to consider the inherent operation of the structure shown in the drawings of the references. In the Adams patent the opening in the rim is relatively larger than in applicant's drawing. It appears that the valve stem and cap would more readily pass through this opening during the creeping of the inner tube than in applicant's device."

We have given careful consideration to all appellant's arguments, most of which have been clearly and correctly answered by the board in the above-quoted part of its decision, and we agree with the board that all the claims on appeal here were properly rejected by the examiner as unpatentable over the Adams patent, and it is not necessary for us to consider any other reference.

Appellant stresses the fact that in the Adams drawing a metallic ferrule is shown, and the specification states that it is clinched to the stem for the purpose of more effectively holding the valve body within the stem. Appellant admits that the opening is shown to be larger in diameter than the diameter of the valve stem. He points out that the ferrule was supplied without any consideration of whether the stem would or would not slip through the opening in the rim and also calls attention to the fact that "the mounting of the tire is not completely shown." Adams states that a metallic ferrule is preferably applied to the end of the stem. As before stated, neither in the Adams patent nor in applicant's original specification is there any suggestion that it is desirable to have the stem slip through the rim and wheel structure.

Adams shows a tapered rubber stem, the base of which is vulcanized to the inner tube. The other end of the stem contains a threaded metal insert. The Adams stem can be bent for application to a rim and wheel in the same manner as can appellant's. Adams' stem is tapered and obviously will clear the hole in the rim, which is larger than the outer end of the stem. It seems to us that the Adams device will function in the same manner as the device of appellant was stated to function in his application.

Certain affidavits relating to the question of inherency, with regard to appellant's disclosure and the disclosures of the references, were filed by appellant. The board, after being petitioned to reconsider its decision, used the following pertinent language: "Applicant is again pointing out [in the affidavits] certain inherent functions which he alleges are present in his device and not described in the references. The main difficulty with this argument is that the references are as informative as applicant's original specification in regard to such functions. If the functions are inherent in applicant's device, they are also inherent in the references."

Appellant filed certain reasons of appeal directed to the failure on the part of the board to consider certain claims submitted by amendment. At the time of oral argument, appellant's counsel stated that he would not contest the correctness of the action of the board in not considering said claims, and the question needs no consideration here.

Appellant argues that the prior art reference structures, so far as is known, never went into commercial use and made no impression on the automobile tire art, whereas appellant's invention has gone into practically all valve constructions of his assignees, the Firestone Tire & Rubber Co. of Akron, Ohio, and that as far as he knows, every manufacturer of inner tubes for automobile passenger cars is using rubber valve stems. In cases of doubt as to patentability, commercial success, if properly and seasonably shown, may be taken

into consideration. We have no doubts about the correctness of the conclusion of the board on the question of patentability. We might add, in passing, that the instant record contains no proof of commercial success or extensive use by the manufacturers referred to in appellant's brief.

The decision of the board is affirmed.

Affirmed.