**STAMICARBON, N.V. and Mathieu Bongard, Plaintiffs,**

v.

**CHEMICAL CONSTRUCTION CORP., Defendant.**

**Civ. A. No. 4442.**

United States District Court,
D. Delaware.

Feb. 14, 1973.

Aubrey B. Lank, of Theisen & Lank, Wilmington, Del., and Carl G. Love of Cushman, Darby & Cushman, Washington, D. C., of counsel, for plaintiffs.

Arthur G. Connolly, Jr., of Connolly, Bove & Lodge, Wilmington, Del., and Berj A. Terzian of Pennie, Edmonds, Morton, Taylor & Adams, New York City, of counsel, for defendant.

## OPINION AND ORDER

LATCHUM, District Judge.

This case is before the Court on the motion of the defendant, Chemical Construction Corporation ("Chemico"), to compel the plaintiff, Stamicarbon, N.V. ("Stamicarbon"), pursuant to Rule 37(a), F.R.Civ.P., to answer interrogatories and to produce all documents identified by Stamicarbon in its answers to the interrogatories. Stamicarbon has refused the discovery on the ground that the information sought pertains to issues which may not be raised in this action. Before considering the specific information sought, it is necessary to understand how this controversy arose.

Chemico's assignor, Ivo Mavrovic ("Mavrovic") filed a U.S. patent application on June 16, 1961 on a process for synthesizing urea. The claims were allowed and the patent issued on March 9, 1965 as U.S. Patent No. 3,172,911. On February 23, 1966, Stamicarbon's assignor, Mathieu Bongard ("Bongard"), filed a U.S. continuation application [1] on a process for synthesizing urea ("continuation application") which sought to rely for priority on Bongard's parent application [2] on a process for synthesizing urea ("parent application") filed in the United States Patent Office on September 5, 1961. The parent application in turn attempted to rely on the filing date of Bongard's patent application for synthesizing urea filed in the Netherlands on September 5, 1960 [3] ("Netherlands application").[4] The filing date of the Netherlands application predated Mavrovic's filing date. Because the parties were claiming a patent on essentially the same process, an interference [5] was declared in the Patent Office on April 3, 1968 between the Mavrovic patent and the Bongard continuation application.

In the interference proceedings Stamicarbon attempted to prove that its Netherlands, parent and continuation applications supported the counts declared by the Board because each inherently disclosed "reducing the pressure of urea synthesis effluent process stream under substantially adiabatic conditions." Stamicarbon thus contended that it was entitled under 35 U.S.C. § 119 to the September 5, 1960 filing date of the Netherlands patent which would give it a priority in filing date over the Mavrovic patent. For its part Chemico first argued and attempted to prove that the disclosures in none of the three Bongard applications supported the counts in the respect claimed by Stamicarbon.[6] Second, Chemico contended that Bongard was barred from relying on the September 5, 1960 filing date of the Netherlands application under 35 U.S.C. § 119 because the subject matter of his U.S. application was inherently disclosed in five earlier foreign applications filed by Bongard in the United Kingdom, the Netherlands, Australia, Ireland and France more than twelve months prior to the filing date of Bongard's parent U.S. application. Third, Chemico argued that the oath accompanying Bongard's parent application was false because it failed to identify the five ear-

1. U.S. Patent Application No. 547,116.

2. U.S. Patent Application No. 135,991.

3. Netherlands No. 255,601.

4. Under 35 U.S.C. § 119, an applicant for a U.S. patent is entitled to the filing date of a prior application in a foreign country on the same invention provided the U.S. application is filed within 12 months of the earliest foreign filing.

5. Interference No. 96,734.

6. Chemico did not argue that there was any material difference in the disclosures of the continuation, parent or Netherlands applications. Board's Final Decision, pp. 10–11.

lier filed foreign patent applications which Chemico claimed inherently disclosed the subject matter of the parent application.[7]

After considering all the issues raised by the parties, the Board of Patent Interferences found that Bongard was entitled to the Netherlands filing date for his continuation application and awarded him priority in a decision rendered on November 16, 1971.

Chemico, the party dissatisfied with the Board's decision on the question of priority, took an appeal under 35 U.S.C. § 141 to the Court of Customs and Patent Appeals. Stamicarbon then elected under § 141 to have all further proceedings conducted under 35 U.S.C. § 146.[8] Under § 146, a dissatisfied party to a patent interference proceeding may bring a civil action to overturn the decision of the Board of Patent Interferences in any United States District Court of competent jurisdiction and venue. However, before Chemico, the dissatisfied party, could bring a § 146 proceeding within the thirty day time limit imposed by § 141, Stamicarbon, the winning party to the interference, brought the present declaratory judgment action in this Court to uphold the Board's decision on priority. Stamicarbon asserted jurisdiction and venue under 28 U.S.C. §§ 2201, 2202, 1338, 1391(b)(c); 35 U.S.C. §§ 135, 146. Chemico answered, and as the dissatisfied party, filed a counterclaim in this Court to overturn the Patent Board's decision on priority, asserting jurisdiction under 28 U.S.C. §§ 1338, 2201, 2202; 35 U.S.C. § 146.

On October 2, 1972 Chemico served a set of sixteen interrogatories on Stamicarbon and an accompanying motion to produce all documents identified in the answer to the interrogatories. When Stamicarbon refused to answer or to produce the documents on the ground that they seek information pertaining to issues which may not be raised in this proceeding, Chemico moved to compel answers and production, asserting that the information sought related to issues which this Court could properly consider. More specifically, Stamicarbon's position is that each of the interrogatories and corresponding production falls into either of two objectionable categories: either the information sought pertains to issues that were not raised by Chemico in the Patent Office interference proceedings and therefore cannot be raised for the first time in a § 146 action or else the information sought is completely irrelevant to the general issue of priority of filing date.

Chemico's position is that the information sought is merely additional evidence relevant to the issues raised in the Patent Office interference and furthermore that new and broader issues may be raised before this Court because Stamicarbon initiated this action by a complaint for declaratory judgment rather than by a complaint filed under § 146, which it otherwise could not have done under § 146 as a satisfied party.

■ These polarized contentions raise two issues for the Court to consider before reaching the discovery motions. The first of these is the basis of the Court's jurisdiction. 28 U.S.C. § 2201 provides that "any court of the United States, upon the filing of an appropriate pleading, *may* declare the right and other legal relations of any interested party seeking such a declaration . . ." (Emphasis supplied). The issuance of declaratory relief is discretionary to the

---

7. The oath required an applicant to identify any previously filed foreign patent application corresponding in subject matter common to the U.S. parent application.

8. 35 U.S.C. § 141 provides a right of appeal to the Court of Customs and Patent Appeals by any party dissatisfied by a decision of the Board of Patent Interferences on the question of priority, but the appeal will be dismissed if any party adverse to the appellant elects to have all further proceedings conducted under 35 U.S.C. § 146 which provides that all further proceedings will be conducted by civil action by the dissatisfied party in a Federal District Court of competent jurisdiction and venue.

Court from which relief is sought. Eccles v. Peoples Bank, 333 U.S. 426, 431, 68 S.Ct. 641, 92 L.Ed. 784 (1948); Alabama State Federation of Labor v. McAdory, 325 U.S. 450, 462, 65 S.Ct. 1384, 89 L.Ed. 1725 (1945); Great Lakes Dredge & Dock Co. v. Huffman, 319 U. S. 293, 300, 63 S.Ct. 1070, 87 L.Ed. 1407 (1943); Brillhart v. Excess Ins. Co., 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942). In deciding whether to exercise its discretion, the Court must consider the policies underlying the enactment of the Declaratory Judgment Act. Professor Borchard, the draftsman of the Act, has stated: "The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding." Borchard, Declaratory Judgments 299 (2d ed., 1941). This policy rule was cited with approval by the Third Circuit in Samuel Goldwyn, Inc. v. United Artists Corp., 113 F.2d 703, 709 (C.A. 3, 1940); see also Dewey & Almy Chemical Co. v. American Anode, Inc., 137 F.2d 68, 69 (C.A. 3, 1943), cert. den. 320 U.S. 761, 64 S.Ct. 70, 88 L.Ed. 454 (1943); Kirkman v. Wilmington Trust Co., 61 F.Supp. 651 (D.Del.1945).

The Court concludes that this underlying policy of the Act would not be furthered by permitting Stamicarbon to seek declaratory relief in the present circumstances. Stamicarbon admits that its sole object in instituting this declaratory judgment action was to obtain a speedy § 146 review. But under § 141, after Stamicarbon elected to have all further review proceedings conducted in a District Court under § 146, Chemico had thirty days in which to file a § 146 civil action, in default of which the Patent Board's decision on priority became final. Thus, Stamicarbon was not a dissatisfied party nor was it confronted with a long period of uncertainty as to whether Chemico would appeal the Board's decision. In fact Stamicarbon has admitted it was motivated simply by a desire to have the § 146 action tried in a forum of its choice which it believed could determine the priority issue promptly in view of its uncongested docket. For the Court to permit declaratory relief under these circumstances would encourage a satisfied party in an interference proceeding to hurriedly file a declaratory judgment in the forum of his choice rather than wait the relatively short period of time for the dissatisfied party to pursue his § 146 review action in the manner which the patent statutes contemplate and specifically provide. This the Court will not condone. See Firemen's Insurance Co. v. Riley, 322 F.Supp. 349 (W.D.Ky.1971); Barron & Holtzoff, Federal Practice & Procedure § 1265 at 299 (Wright ed). Accordingly, as a matter of discretion the Court will dismiss Stamicarbon's action for declaratory relief. Chemico could have moved to dismiss Stamicarbon's present complaint and filed within the time limitation a § 146 action in a District Court of its choice had it determined to press for a review.

Chemico, the dissatisfied party, however, has independently cured any defect in the instant action by filing its own counterclaim under § 146. On that basis alone this Court has the power to review and decide the priority question under 35 U.S.C. § 146 and 28 U.S.C. § 1338. Accordingly, all procedural and policy restrictions applicable to § 146 actions are fully applicable to the instant case.

Moreover, even if the Court had permitted Stamicarbon to proceed with its declaratory judgment action, the restrictions present in § 146 actions would still be applicable here. Jurisdiction of declaratory actions must still rely on other statutes creating a right and remedy. 6 A. J. Moore, Federal Practice ¶ 57.23 at 3136. The effect of a declaratory judgment action is procedural only, in that it permits a party to determine his rights immediately instead of waiting to be sued. Otherwise, the action is the same, and the restric-

tions, bound up in the statute creating the right, are applicable. See Aralac, Inc. v. Hat Corporation of America, 166 F.2d 286, 291 (C.A. 3, 1948); E. Edelmann & Co. v. Triple-A Specialty Co., 88 F.2d 852, 854 (C.A. 7, 1937), cert. den. 300 U.S. 680, 57 S.Ct. 673, 81 L.Ed. 884 (1937). Therefore, any restrictions on raising new issues in a normal § 146 action would be applicable to a declaratory judgment action.

■■ The second question that must be considered is the extent to which new issues not raised before the Patent Board may be introduced into a § 146 action. As a general rule, a party to an interference proceeding is not permitted to raise totally new issues at appellate levels. Philco Corp. v. Radio Corp. of America, 276 F.Supp. 24 (D.Del.1967); Radio Corp. of America v. Philco Corp., 201 F.Supp. 135 (E.D.Pa.1961), aff'd per curiam 309 F.2d 397 (C.A. 3, 1962); Potter Instrument Co. v. Mohawk Data Services Corp., 309 F.Supp. 866 (S.D.N.Y.1969). The policies underlying this rule are to encourage full disclosure to the administrative tribunal, California Research Corp. v. Ladd, 123 U.S.App.D.C. 60, 356 F.2d 813, 820 n. 18 (1966), and to afford the Court the benefit of the agency's expertise on those issues. Philco Corp. v. Radio Corp. of America, supra; General Motors Corp. v. R. E. Dietz Co., 137 U.S.App.D.C. 100, 420 F.2d 1303, 1306 (1969). Thus, Chemico is estopped from raising totally new issues in this review proceeding.

■ This, however does not dispose of Chemico's present discovery motion. Chemico asserts that the interrogatories objected to would not elicit information pertaining to new issues, but would bring out additional evidence on issues that had been raised before the Patent Office. Interrogatories 2 and 13, objected to as new issues, ask Stamicarbon to identify every foreign application cor-responding to its Netherlands application and to a prior Netherlands application filed in 1958. As previously mentioned, during the proceeding before the Board, Chemico advanced the argument that Bongard was not entitled to the prior Netherlands filing date because the subject matter of Bongard's U.S. parent and continuation applications was inherently disclosed in foreign patent applications filed by Bongard in the United Kingdom, the Netherlands, Ireland, Australia and France more than one year prior to the filing of the parent application. Chemico argues here that the issue before the Board was whether foreign filings prior to September 5, 1960 inherently disclosed the subject matter of Bongard's parent application. Chemico thus contends that any additional foreign filings about which information is now sought may yield additional evidence on that issue. The Court finds, however, that the issue presented to the Board was not that broad. In the interference proceedings Chemico argued that only five foreign filings prior to September 5, 1960 inherently disclosed Bongard's parent application. Any one of the foreign filings could have barred Bongard from relying on the September 5, 1960 filing date. Thus each foreign application was a separate issue, and any additional foreign applications that Chemico would present now for the first time would be new and totally separate issues not passed on by the Board. Chemico specifically raised and placed into evidence five foreign filings, and it will not now be heard to assert that other foreign filings constitute merely additional evidence which strengthens the contentions and evidence before the Board. Because Chemico is barred from asserting additional foreign applications other than the five already presented, the interrogatories requesting identification of additional foreign filings need not be answered.[9]

9. Since the Court has found that Chemico is seeking to raise new issues, it need not consider Stamicarbon's argument that Chemico should not be permitted to bring in evidence introduced during the interference proceedings because the evidence was available to it at that time.

■■ In addition to the above objection directed specifically at Interrogatories 2 and 13, Stamicarbon objects generally to all sixteen interrogatories on the ground that the information they seek to elicit is completely irrelevant in determining inherent disclosure, which is the dispositive consideration for all three issues that Chemico raised before the Patent Board of Interferences. Chemico's first issue was that the disclosure of Bongard's parent and continuation applications does not support the counts, and its second issue was that five foreign patent applications filed prior to September 5, 1960 inherently disclose Bongard's parent and continuation applications. Inherent disclosure requires that a person following the disclosures will invariably obtain the result set forth in the count. Gubelmann v. Gang, 408 F.2d 758, 766 (C.C.P.A. 1969). Ordinarily evidence will not be received as to what was *intended* by the disclosure of a pending application because the disclosure must speak for itself. Eastman Kodak Co. v. E. I. DuPont de Nemours & Co., 284 F.Supp. 389, 394 (E.D.Tenn.1968); see also Application of Smyth, 189 F.2d 982 (C.C.P.A., 1951); In re Robertson, 127 F.2d 304, 29 C.C.P.A. 977 (1942); Application of Rogoff, 94 F.Supp. 377 (M.D.Pa., 1950). Thus ordinarily the only relevant evidence in determining inherent disclosure is evidence that relates to the question whether those who follow the disclosure will invariably or inevitably obtain the result set forth in the count.

■ Chemico contends that all sixteen interrogatories are relevant because Stamicarbon's declaratory complaint has placed in controversy the questions of first inventorship and the invalidity of Chemico's claims. Thus, the argument goes, since the interrogatories are reasonably calculated to lead to admissible evidence on those issues, they must be answered. However, as discussed above, the Court has dismissed Stamicarbon's declaratory complaint and any issues raised therein not permitted to be raised in a § 146 action will not be considered.

The issue of first inventorship is a new issue not raised in the Patent Office and therefore may not be raised in this Court for the reasons set forth above, and the issue of validity generally may not be raised for the first time in a § 146 proceeding which is a proceeding to review a priority award.

Chemico also asserts alternative grounds justifying each interrogatory which the Court will treat individually.

■ Chemico's first five interrogatories are directed toward Bongard's Netherlands application. Interrogatory 1 inquires of the conception, first reduction to practice, first disclosure and the inception of the process claimed in the Netherlands application. Interrogatory 2 inquires as to all other foreign filings corresponding to the Netherlands application. Interrogatory 3 seeks to discover any laboratory research relating to the subject matter of the Netherlands application. Interrogatories 4 and 5 inquire as to any pilot or commercial plant operations pertaining to the subject matter of the Netherlands application. Chemico's argument is that these discovery requests will definitely ascertain the exact nature of the process which Stamicarbon *purports* to disclose in its Netherlands application and the subsequent U.S. applications involved in the interference. The Court finds this reason unavailing. As previously noted, the disclosures of the applications involved must speak for themselves. Therefore what Stamicarbon *purported* or *intended* to disclose in writings other than the application is irrelevant to the priority issue here involved. Relevant evidence must be addressed to the inherency of the disclosure in the language of the applications themselves. Interrogatories 1–5 need not be answered for the alternative reasons asserted by Chemico.

■ Interrogatory 6 inquires of the circumstances by which Bongard or Stamicarbon first learned of the Mavrovic patent. Interrogatory 7 inquires of changes made in Bongard's parent and continuation applications as compared to

the Netherlands application. Interrogatory 8 inquiries as to the search for prior art made by Stamicarbon to uncover documents which would convince the Patent Office of the priority of Bongard's application. The justification asserted for these three interrogatories by Chemico is that the material discovered will reveal Stamicarbon's strenuous efforts to persuade a reluctant Patent Office to institute the interference. The Court fails to see even the remotest connection between Chemico's offer of proof and the inherency of the disclosure. Stamicarbon need not answer Interrogatories 6–8 for the reasons given by Chemico.

Interrogatory 9 inquires whether Bongard was specifically consulted on any of the submissions that were made to the Patent Office in his behalf during the three year period that Stamicarbon attempted to have the Patent Office declare an interference. Interrogatories 10 and 11 inquire into prior art known to Bongard or Stamicarbon during the copying of Mavrovic's claims to provoke an interference and during the prosecution of the interference. Chemico argues that these three interrogatories are clearly relevant to the false oath issue which was previously contested in the Patent Office. With regard to priority, which is the only matter before the Court in this § 146 action, the false oath issue advanced is but another form of argument that the continuation application was inherently disclosed in the five foreign applications filed prior to September 5, 1960. If the Court should find for Chemico on this issue, then Bongard's oath was false; if the Court should find for Stamicarbon on that issue, then Bongard's oath was truthful. Because the false oath claim is really not a separate issue in this proceeding, it does not broaden the scope of discovery since the only relevant evidence must relate to the inherency of the disclosure itself. Therefore Interrogatories 9–11 need not be answered for the reasons asserted by Chemico.

Interrogatories 12–16 are addressed to the earlier Bongard Netherlands application filed on August 8, 1958. The interrogatories are identical to the questions asked in Interrogatories 1–5 with regard to the Netherlands application relied on by Bongard for priority. Chemico asserts that the information sought to be elicited will lead to evidence of the exact nature of the process disclosed in the earlier Netherlands application and its foreign counterparts. This argument is rejected for the same reason as expressed with respect to Interrogatories 1–5. Chemico advances another reason for the admissibility of the material sought. The Board noted that the critical temperature involved in a step of the process disclosed by earlier Netherlands application was unclear and ambiguous, and for that reason refused to find that the earlier Netherlands application inherently disclosed Bongard's U.S. applications. Chemico argues that the material sought will reveal the critical temperature, proving that the U.S. applications were inherently disclosed by the earlier Netherlands application. The doctrine of inherent disclosure requires that the language of the foreign application itself must inherently disclose the subject matter of the later application. If a specific temperature at a given point in the process would be critical in determining whether the process had been inherently disclosed by the earlier Netherlands application, this temperature must be shown to occur invariably from following the language of the disclosure itself. If it cannot be so shown, then the process was not inherently disclosed.

The discovery sought by Interrogatories 12 through 16 and the corresponding requests for production are found not to be relevant on the question of inherent disclosure and therefore need not be answered.

## ORDER

Accordingly for the reasons heretofore given, the motion of Chemical Construc-

tion Corporation to compel Stamicarbon, N.V., pursuant to Rule 37(a), F.R.Civ. P., to answer interrogatories and to produce documents (Docket Item 15) is hereby denied.