219 F.2d 666
 Ben MARTINEZ and Terry Production Corporation, Individually and as Representatives of a Class,
v.
MAVERICK COUNTY WATER CONTROL AND IMPROVEMENT DISTRICT No. 1, et al.
 No. 14891.
 United States Court of Appeals, Fifth Circuit.
 February 18, 1955.
 
 G. C. Mann and George D. Byfield, Laredo, Tex., for appellants.
 W. M. Cleaves, Houston, Tex., Jeremiah Ingels Rhodes, Gerald D. Becker, Eagle Pass, Tex., W. F. Nowlin, Patrick H. Swearingen, Jr., Brewer, Matthews, Nowlin & Macfarlane, San Antonio, Tex., for appellees.
 Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.
 RIVES, Circuit Judge.
 
 
 1
 Like the case of Hudspeth County Conservation and Reclamation District No. 1 v. Robbins, 5 Cir., 213 F.2d 425, the occasion for this suit is the shortage of rainfall in the watersheds of the Rio Grande River and its Tributaries.
 
 
 2
 This case was first argued and submitted before a panel of this Court consisting of Circuit Judge Strum and District Judges Dawkins and Hooper, and, without agreement being reached on a decision, it was assigned to Judge Dawkins for opinion. Judge Strum died before the case could be decided and, upon the suggestion of Judges Dawkins and Hooper, the case was restored to the docket, and, upon re-submission, it fell to the present panel.
 
 
 3
 With Judge Dawkins' permission, we adopt the statement of the case prepared by him on former submission.
 
 
 4
 Statement of Case Prepared by Judge Dawkins.
 
 
 5
 Plaintiffs, Ben Martinez (alleging himself to be a citizen of the Republic of Mexico but residing in Webb County, Texas) and Terry Production Corporation (created under the laws of Delaware but having a place of business in said county), each allegedly owning or leasing lands enjoying "riparian" rights superior to those of defendants and fronting on the Rio Grande River, international boundary between the said Republic and the United States, brought this suit as a class action, in their own behalf and that of all others similarly situated, under Rule 23(a) of Civil Procedure, 28 U.S.C.A. (1) against Maverick County Water Control and Improvement District No. 1 (called Maverick Water District), created by an act of the legislature of Texas; (2) against Wyatt C. Hendrick and Reg McQuatters, individually and as class representatives of all persons, firms and corporations (but excluding all cities, towns and villages), who own or are lessees of lands also fronting on said River in the same general area, having only "appropriation" rights because they were sold or patented to defendants or their authors in title by the State of Texas subsequent to March 19, 1889; and (3) against S. Otis Sullivan, W. C. Butler and J. W. Thompkins, individually and as class representatives of all persons, firms and corporations who or which own or lease and are in possession of lands fronting the Rio Grande within the bounds of defendant Maverick Water District, which also takes water therefrom for distribution to users, as well as against others who personally divert water for irrigation directly from the Rio Grande rather than buying it from said District; all of said defendants being in the class called appropriators.
 
 
 6
 The area involved is described as follows: "Commencing on the north with the most southerly boundary line of Maverick County Water Control and Improvement District No. 1 in Maverick County, Texas, the southeast corner thereof being near the point where the San Antonio Creek empties into the Rio Grande, extending to the south down the Rio Grande to the hereinafter alleged point above the boundary line of Hidalgo and Starr Counties (all of such land being situated in Maverick, Webb, Zapata and Starr Counties) * * *" and plaintiffs' lands so owned or leased are located either in "Spanish Grants, title to which passed out of the King of Spain in the 18th Century, or in Sections patented by the State of Texas prior to March 19, 1889, * * *."
 
 
 7
 For cause of action plaintiffs allege that during the period of a severe drouth extending from May, 1953, to the filing of this complaint on August 6, 1953, the defendants named, as well as all others of defendant class upstream from plaintiffs, have taken from said Rio Grande River all of the water before it reached the complainants, thereby depriving them entirely of its use and causing great damage to their livestock and growing crops, all in violation of plaintiffs' alleged superior lawful rights; that the water so withdrawn was also used by means of canals for irrigating lands more than 100 miles distant from and in no sense riparian to said river.
 
 
 8
 Plaintiffs further allege that their lands and those of all others in the same class, having been severed from the public domain prior to the act of the Texas Legislature of March 19, 1889, enjoy riparian rights to the water of said river which run with their titles, embracing all "that is below the line of highest ordinary flow" for all purposes superior to the lands of defendants, appropriators, which were severed from the public domain after that date; and that complainants are entitled also to participate ratably in the flow above said line.
 
 
 9
 As the basis for the class action, plaintiffs allege that the numbers of persons on each side of this controversy, consisting of hundreds, are too numerous to be made parties in one complaint; for which reason they ask that the court appoint a master with authority to ascertain the names and locations of all others in each class within the segment named, to whom notice shall be given of their right, within a reasonable time, to intervene herein, after which all the parties be aligned according to class; that upon trial a declaratory judgment be entered fixing the rights of each class with respect to said waters; and that the said master be ordered to stand by for the purpose of apportioning said water when necessary in periods of drouth with power to apply for writs of injunction to prevent violation and to enforce said decree.
 
 
 10
 Defendant Maverick Water District first moved to transfer the case to the Western District of Texas, its alleged domicile, on the ground that neither plaintiffs nor defendants were residents of the Southern District of Texas as required by the applicable law, 28 U.S.C.A. § 1391, and the court of the latter District was without venue. This was followed by a motion to dismiss by the same defendant on the grounds that under the facts alleged:
 
 
 11
 I. The suit is "not maintainable" as a class action;
 
 
 12
 II. Martinez is an alien, and Terry Corporation is not a citizen or resident of the Southern District of Texas, while Maverick Water District is "a body politic or subdivision of the State of Texas, with its situs in the Western District";
 
 
 13
 III. The Rio Grande forms the international boundary between the Republic of Mexico and the United States; that all who use water throughout its length are necessary parties; and that the court "should not take jurisdiction over a segment of the stream" and make decisions involving the rights of others above and below not made parties for the reason they would not be bound thereby, and particularly in view of the fact that a State Court of competent jurisdiction has already taken jurisdiction of the same subject matter;
 
 
 14
 IV. and V. The Rio Grande being a navigable stream, the disposition of whose waters as between Mexico and the United States has been determined by treaty, they are not subject to private ownership or control but are governed by "treaty provisions regulating the division, use and distribution"; that by that treaty (of November 14, 1944, 59 Stat. 1219) "no additional use of any kind was to be made of the waters * * from" that date "* * * until after the series of dams provided therein * * * had been completed * * *"; and that the same circumstances were "recognized in the compacts between the State of Texas and Colorado and Texas and New Mexico in the construction of dams on the upper reaches of the Pecos River" and have been "so recognized for a period of over one hundred years";
 
 
 15
 VI. The unprecedented drouth complained of has now ended and the issue thus raised has become moot because of an over-abundance of rain and water in said river. The tentative location for a second dam in the series contemplated by the treaty of 1944 has been made and preparations for its construction are in progress, which will be above the segment involved here and as recognized in the plan "will alleviate the conditions of water shortage in the Rio Grande River. By reason of these facts, this court in the exercise of judicial discretion should not take jurisdiction in this case and inaugurate long, tedious, complicated and involved and expensive proceedings when in the light of human experience the condition of deficiency of water supply resulting from the unprecedented drouth will not recur during the lifetime of any of the parties * * * in this generation, coupled with the program now in process of completion of the construction of dams on the Rio Grande River under the treaty * * * will take care of the water supply in the Rio Grande River." Further, plaintiffs' contention as to their legal priority is not supported by the law, and the State of Texas had the right to create the defendant water district with power to administer the waters in the streams of the state, superior to any claims by complainants.
 
 
 16
 VII. Plaintiffs' contention "that the State of Texas in enacting its water laws from and after March 19, 1889, did so for the special benefit of holders of lands abutting the Rio Grande River * * * under Spanish grants" is fallacious.
 
 
 17
 VIII. And finally, "This defendant is a political subdivision of the State of Texas, and as an appropriator under an appropriation issued for its account by the Board of Water Engineers of the State of Texas, is entitled to the aggregate of all of the waters of the State of Texas falling and accumulated in the upper reaches of the Pecos River, the Devils River and other tributaries and all lands within its territorial confines, belonging to the State of Texas on March 19, 1889, and as is clearly stipulated and provided for in the treaty between the United States and Mexico, of November 14, 1944, it is entitled to the use of the bed of the Rio Grande River for transporting and receiving such waters, for all of which reasons plaintiffs have no justifiable complaint against this defendant in this cause."
 
 
 18
 Defendant Water District prayed that, subject to its motion for change of venue, the complaint be dismissed.
 
 
 19
 Plaintiffs, of course, opposed the motion to dismiss, in detail, and submitted five affidavits supporting the allegations of their complaint as to the conditions which deprived them of water from the Rio Grande. They likewise opposed the motion to transfer the action to the Western District of Texas, on the ground that it was one of a local nature involving real rights with respect to lands within the Southern District and therefore maintainable therein.
 
 
 20
 The court below, in a memorandum opinion, dismissed the suit apparently on the grounds, first, of absolute discretion as to both the class action and the prayer for a declaratory judgment, and, second, that the real plaintiffs were members of an association composed of individuals who were citizens of Texas (as were all other alleged riparian claimants) between whom and the defendants there was no diversity, and no jurisdiction in a federal court. This interpretation seems justified from the following condensation of what was said:
 
 
 21
 "Conceding, without discussing: that plaintiffs, and the class they want to represent, have vested riparian rights, that they are appurtenances to the realty in the nature of an incorporeal heriditament; that such rights are superior to appropriation rights under the Texas statutes; that diversion of the normal flow so as to deprive riparian owners of their reasonable share of the water, even though it takes place upriver before the water reaches the land in question, clouds the title and is, therefore, a local action and might therefore be maintained in either district; that ordinarily this type of action might properly be prosecuted as a class suit; that a federal court has jurisdiction of a class action, if there is diversity of citizenship between the original parties of record, even if there are other members of the same class who, if original parties to the action would defeat jurisdiction, even though they later intervened; conceding all of these propositions, since allowing either a declaratory judgment or class action, or both, to be prosecuted involves discretion, I feel that, under all the circumstances of the record and matters of which I may take judicial knowledge, I should decline the invitation of counsel for plaintiffs to `accept the challenge presented in this case, that is, to help solve the problem of water rights which it looks like the legislature of Texas cannot solve * * *'
 
 
 22
 "* * * the Texas water laws and decisions are in hopeless confusion; * * * their application and administration would be difficult * * *; said laws confer little, if any, real authority upon the State Board of Engineers; that the Board has granted permits on many streams * * * very few of which have been canceled, in such numbers and for such quantities that if riparian rights are given the full effect for which plaintiffs contend, practically every drop of water, normal flow or flood, is `bespoken' * * * particularly true in the Rio Grande Valley * * *;" (Emphasis supplied.)
 
 
 23
 The lower court then pointed out that many efforts had been made to solve the problem by the Texas Legislature and other agencies without success, and further, that "among other difficult problems are the ones posed in this action: what are riparian rights, how far they extend, how long they last, etc.", observing that the "pitiful plight of cities and towns became so acute in the lower [Rio Grande] valley in 1952, and in the Laredo area in 1953" that it "led to the unprecedented action in Hidalgo County W[ater] I[mp.] Dist. [No. 2] v. Cameron County [Tex.Civ.App., 253 S.W.2d 294] and the appointment of a water master and the issuance of a temporary injunction. The practical difficulties inherent in such supervision by a Court are pointed up in the dissenting opinion by Chief Justice Murry." (Emphasis supplied.)
 
 
 24
 This was followed by the statement that "in the face of all this, in spite of the plight of these communities and the failure of state authorities to act, this Court is asked to take over the waters that belong to the state in trust * * * until the legislature acts * * * to solve its own problems * * *." Yet, he added: "I do not believe they [the questions involved] can be determined in one segment of the Rio Grande, without consideration of the whole. If the Courts are to be called upon to administer state problems, it should be done in the State Courts; especially where, as here, a State Court has taken jurisdiction over the waters of a part of the same river." (Yet, in the statement quoted above the lower court termed action by a state court, such as is sought here, "unprecedented".)
 
 
 25
 The court then conceded, as it must, that "in diversity actions a plaintiff has his choice as to whether he will sue in a State or Federal Court * * *." However, it added that "with commendable frankness" the affidavits filed in support of the plaintiffs' bill showed that about fifty persons suffering from the same circumstances "consulted with plaintiffs' counsel, formed an association, incorporated it under Texas laws" and, failing to work out a settlement with defendants, this suit was filed. Further, the affidavits showed some 250 farmers and ranchers in Starr, Webb and Zapata Counties requested that they also be included and they would help pay the attorney's fees and expenses of such an action; that it was agreed the present plaintiffs, having the right to sue in the federal court, should bring the suit in their names on behalf of all, as a class action, with the understanding that they (plaintiffs) should bear "only their proportionate part of such costs as assessed by the said associations". The court stated that, while the affidavits had not mentioned all of this large group were citizens of Texas, "I am sure it will not be denied * * * and it is clear that the association is the real party at interest * * * and it could not sue Texas defendants in this court". It was then observed that, while "Courts have gone pretty far in permitting class suits where there is diversity between the parties of record, even though the members of the class may not meet these tests * * * it is carrying the faction [fiction] a bit too far" to permit what was attempted in this case. "On brief, counsel for the association (styling themselves as attorneys for plaintiffs) even asked that the Court cause the many farmers to be made parties. This just will not do." The court expressed the further view there was "no difference here from Johnson v. Riverland Levee Dist., 8 Cir., 117 F.2d 711, 134 A.L.R. 326, 333" and, finally, concluded: "No immediate and irreparable injury is threatened. The condition of which complaint is made are admittedly due to the unprecedented drought of the past spring and summer. Plaintiffs ask, however, that after their and all other riparian rights are determined and declared, the Court appoint a master to find the facts as to the correlative rights of the various users, and then set up basic rules and regulations for division of the waters in time of shortage by a Water Master; and that the Court stand ready with an injunction to enforce these orders `until adequate storage dams are built to insure an adequate supply of water in the Rio Grande.' As pointed out above and conceded by plaintiffs' counsel, these are legislative and administrative problems for the state. If state authorities continue to fail to act and another emergency appears, I see no reason why plaintiffs, and those for whom they sue, cannot secure their rights in the State Courts."
 
 
 26
 The dismissal was without prejudice, but at plaintiffs' cost.
 
 
 27
 Appellants make only two general assignments of error: (1) the suit was properly brought as a class action and there was no legal justification for its dismissal; and (2) the reasons given by the trial court for declining to give declaratory relief were wrong, and this court should "supersede its judgment * * * and order this case to be tried on its merits."
 
 
 28
 Appellee, of course, contends that the decision appealed from was correct and should be affirmed for the reasons stated in the memorandum opinion.
 
 
 29
 The clarity and completeness of Judge Dawkins' statement of the case, just concluded, make possible a comparatively brief treatment of the specifications of error. The first specification presents interesting and difficult questions of law, the decision of which may be pretermitted because, assuming those questions decided favorably to appellant, nevertheless, under the second specification, we have no doubt that the district court properly exercised its discretion in refusing to entertain the action for declaratory judgment. Clearly the court could refuse a decree that would not " `terminate the uncertainty or controversy giving rise to the proceeding.'" Public Service Commission of Utah v. Wycoff Co., 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291; see 6 Moore's Federal Practice, 2nd Ed., Sec. 57.08(4), pp. 3032 et seq.; Borchard, Declaratory Judgments, (2nd Ed., 1941), p. 299; Aetna Cas. & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Samuel Goldwyn, Inc., v. United Artists Corporation, 3 Cir., 113 F.2d 703.
 
 
 30
 As has been often stated, Rule 23(a), Federal Rules of Civil Procedure divides class actions into three types according to the jural relations of the members of the class. The first type, 23(a) (1), covers cases where the right sought to be enforced is joint, common, or derivative, and is termed the true class suit. 3 Moore's Federal Practice, 2nd Ed., Sec. 23.08, pp. 3434 et seq. Professor Moore states that "The doctrine of res judicata as applied to true class actions has been clearly settled by the United States Supreme Court in Supreme Tribe of Ben Hur v. Cauble, (255 U.S. 356 [41 S.Ct. 338, 65 L.Ed. 673])", 3 Id., Sec. 23.11, p. 3460. The second type, 23(a) (2), covers cases calling for the distribution or management of specific property, and is termed the hybrid class suit. 3 Id., Sec. 23.09, pp. 3439 et seq. As to hybrid class actions, Professor Moore succinctly states the rule as follows: "Insofar as the proceedings operate in rem they are conclusive; insofar as they are in personam they do not bind those not parties." 3 Id., Sec. 23.11(4), pp. 3468, 3469. The third type, 23(a) (3), covers cases where the class is formed solely by the presence of a common question of law or fact, is in reality a permissive joinder device, and is termed the spurious class suit. 3 Id., Sec. 23.10, pp. 3442 et seq. In a spurious class action the decree does not bind the class, but binds only those actually before the court. 3 Id., Sec. 23.11(3), pp. 3465 et seq., and authorities there cited.[1]
 
 
 31
 The present suit is sought to be maintained as a double-barreled class action, that is by plaintiffs representing a class and against defendants representing a class. On neither side is it claimed, nor can it be, that this is a true class suit. Instead, appellants claim in their brief that it is either a hybrid or a spurious class action or both:
 
 
 32
 "Appellants submit that this is unquestionably a proper `hybrid' class suit and furthermore that the intervention of the individual members is ancillary to the main suit and established practice in a hybrid or spurious class action after the common questions of law and fact are settled and it is necessary to distribute the property involved between the members of the class. In fact, under Federal Rule (a) (3) the right of the members of the class to intervene is absolute and independent grounds of Federal jurisdiction are not necessary. Intervention in this case would only be after the Court has determined that plaintiffs have riparian rights, what the riparian waters are, and that the Court should take judicial custody of the American share of the waters in order that same might be prorated in times of shortage."
 
 
 33
 Up to the rendition of the declaratory decree this proceeding, at best for appellants, would be a spurious class suit; then, if the court should proceed to execute its declaratory judgment by taking the American share of the waters of the river into custody and setting up machinery for their apportionment in time of shortage, the proceeding may become a hybrid class suit, purely ancillary to the original spurious class suit. See Hoffman v. McClelland, 264 U.S. 552, 558, 44 S.Ct. 407, 68 L.Ed. 845; 54 Am.Jur., U.S. Courts, Sec. 34. The declaratory judgment would be binding only on those parties actually before the court; each new party asserting his rights in the waters of the river, in the same or any other court, would have the right to relitigate the questions already adjudged as between those before the court.
 
 
 34
 Considering next the effect of the decision under the doctrine of stare decisis, we observe what the court is asked to determine, viz.: that under the laws of Texas, riparian rights are superior to the rights of appropriators; that the plaintiffs do have riparian rights, and that defendants do not; what are the riparian waters of the Rio Grande in the reach here described; to declare that plaintiffs' rights to such riparian waters are superior to the rights of defendants; and to provide a basis for the speedy enforcement of the court's judgment in the event of a subsequent water shortage. Every question of law presented is one of local State law, as to which the decisions of the Texas State Courts would be controlling as precedents. Hence, the declaratory judgment of the federal court would not be binding as stare decisis. See Public Service Commission of Utah v. Wycoff Co., supra, 344 U.S. at page 247, 73 S.Ct. 236.
 
 
 35
 Further, if the court should ever reach the stage of executing its declaratory judgment, of taking judicial custody of the Rio Grande within such reach, appointing a water master, and requiring all parties using any such waters to secure prior permission from the water master or the court, then indeed the federal court would pre-empt issues of state law between citizens and residents of Texas and which should be left to state courts or tribunals. It would be hard to conjure up a case more incompatible with a proper federal-state relationship. Cf. Public Service Commission of Utah v. Wycoff Co., supra, 344 U.S. at pages 246, 247, 73 S.Ct. 236. See 6 Moore's Federal Practice, 2nd ed., Sec. 47.08(7), pp. 3044 et seq., and authorities there cited.
 
 
 36
 We conclude that the district court properly exercised its discretion in refusing to entertain plaintiffs' complaint, and the judgment is
 
 
 37
 Affirmed.
 
 
 38
 DAWKINS, District Judge, dissents.
 
 
 
 Notes:
 
 
 [1]
 For an interesting discussion of the three species of class actions see Kainz v. Anheuser-Busch, Inc., 7 Cir., 194 F. 2d 737, 740 et seq. Professor Moore gives an effective summary of what we have been trying to say:
 "To summarize: A new subdivision to Rule 23 based on case law and the practicalities of litigation would read as follows:
 "(d) Effect of Judgment. The judgment rendered in the first situation [the true class action, Rule 23(a) (1)] is conclusive upon the class; in the second situation [the hybrid class action, Rule 23(a) (2)] it is conclusive upon all parties and privies to the proceeding, and upon all claims, whether presented in the proceeding or not, insofar as they do or may affect specific property, unless such property is transferred to or retained by the debtor affected by the proceeding; and in the third situation [the spurious class action, Rule 23(a) (3)] it is conclusive upon only the parties and privies to the proceeding." 3 Moore's Federal Practice, 2nd ed., Sec. 23.11(5), p. 3472.
 
 
 
 39
 HUTCHESON, Chief Judge (concurring specially).
 
 
 40
 I concur in the judgment of affirmance and the reasons given for it in the majority opinion.
 
 
 41
 Further, I agree with the district judge, that the suit was not a proper class suit and that, in declining to entertain it as such, he was well within the limits of his discretion.[1] I see no fault in the reasoning, and no abuse of discretion in the holding, of the district judge, that under "the circumstances surrounding the case" which were "disclosed by a positive showing", the action, which was at best for plaintiff a "spurious" class action,[2] ought not to, indeed could not properly, be entertained by him as such.[3]
 
 
 
 Notes:
 
 
 [1]
 Moore Federal Practice, Vol. 3, par. 23.05, page 3422
 
 
 [2]
 Cf. Kainz v. Anheuser-Busch, 7 Cir., 194 F.2d 737
 
 
 [3]
 Cf. Johnson v. Riverland Levee Dist., 8 Cir., 117 F.2d 711, 134 A.L.R. 326, which, with reference to the statement in the dissenting opinion to the contrary, was sought to be maintained as a proper class action and was held not to be
 
 
 
 42
 DAWKINS, District Judge (dissenting).
 
 
 43
 With my approval the majority has incorporated the first portion of the opinion which I had prepared on the previous submission of this case. Further consideration has led me to the same conclusion stated in that opinion, and I must therefore disagree with the views of my brothers. The majority found it unnecessary to consider the question of jurisdiction or whether the suit was properly brought as a class action. These issues, as well as those discussed by the majority, were resolved by me in favor of the appellants, and I feel it necessary to discuss all of them in order to present my views clearly. However, I shall not repeat the statement of the case adopted by the majority, simply including it by reference.
 
 Jurisdiction
 
 44
 The motion to dismiss raised the issue of jurisdiction which, if good, made it unnecessary to consider the matter of discretion, or whether it could more appropriately be handled in the state court.
 
 
 45
 Although there is undisputed diversity of citizenship between the record parties, under Rule 17(a), the court was called upon to determine if the named plaintiffs are real parties at interest in the subject matter of the litigation. This question must first be settled before we reach the class action or the attempt to bring in other parties by affording them an opportunity to intervene. There is no suggestion of any fraud or collusion between the record plaintiffs and the others who took part in the agreement for the suit to be brought by Martinez and Terry Corporation. Admittedly, the arrangement was made because they were not citizens of Texas and could therefore sue in a federal court. In view of the conditions described by the lower court, prevailing for many years, wherein all efforts at solution had failed, can it be said that the equitable relief sought here must be denied? There is a serious question as to whether a state trial court, district or circuit, in Texas can exercise its jurisdiction beyond its territorial limits; whereas, the lower court's authority covers a much larger area and a substantial section of the river as described in the complaint. Presumably it would be free from the political and other conditions which, according to the court below, have thwarted efforts at relief over the years. Nor was there anything immoral in the understanding that all who hoped to benefit should share the expense, including attorneys' fees. The record complainants were bona fide owners or claimants of a property interest in the lands and waters involved, as were the members of the association and others who requested that they be represented in the litigation. In the absence of fraud or collusion, the motives of litigants in seeking federal jurisdiction are immaterial. Blair v. City of Chicago, 201 U.S. 400, 26 S.Ct. 427, 50 L.Ed. 801. I therefore believe that this phase of the question of jurisdiction is controlled by Wheeler v. City and County of Denver, 229 U.S. 342, 33 S.Ct. 842, 57 L.Ed. 1219, and must be resolved in favor of the plaintiffs (appellants). See also Moore, Federal Practice (2d Ed.), Vol. 3, Par. 17.03, p. 1311, et seq.; Par. 17.05, p. 1319, et seq.; Par. 17.07, p. 1330; Par. 23.13, p. 3477, et seq.
 
 
 46
 In Johnson v. Riverland Levee District, 8 Cir., 117 F.2d 711, 714, 134 A.L. R. 326, relied upon by the trial court, three non-residents of Missouri brought an action in the federal court seeking to enforce liens and follow assets as holders of certain bonds of the defendant levee district. Subsequently, an order was entered granting leave to amend and authorizing other bondholders to "`intervene and join Plaintiffs in said amended complaint'." A large group did join the plaintiffs in the amended complaint, styling themselves "intervener-Plaintiffs", some of whom were residents of the same state as the defendants. On motion, the trial court held, inter alia, that it did not have jurisdiction because there was not complete diversity of citizenship. The Court of Appeals affirmed, holding that because this was not a class action and because the original plaintiffs had voluntarily joined with the "intervener-plaintiffs", jurisdiction was defeated when diversity was lost.
 
 
 47
 Clearly that case furnishes no authority for the holding in this instance that the association was the real party at interest, rather than the record plaintiffs. Whether or not the subsequent entry of the other landowners and lessees as prayed for by the record plaintiffs here will defeat jurisdiction depends upon whether or not this is a proper class action. Stewart v. Dunham, 155 U.S. 61, 5 S.Ct. 1163, 29 L.Ed. 329; Supreme Tribe of Ben Hur v. Cauble, 255 U.S. 356, 41 S.Ct. 338, 65 L.Ed. 673. Hence I proceed to a consideration of that issue, pausing to note also that in the Johnson case the plaintiffs did not allege facts to bring their suit within the requirements of a class action.
 
 
 48
 The Class Action.
 
 Rule 23 of Civil Procedure provides:
 
 49
 "Class Actions
 
 
 50
 "(a) Representation. If persons constituting a class are so numerous as to make it impracticable to bring them all before the court, such of them, one or more, as will fairly insure the adequate representation of all may, on behalf of all, sue or be sued, when the character of the right sought to be enforced for or against the class is
 
 
 51
 "(1) joint, or common, or secondary in the sense that the owner of a primary right refuses to enforce that right and a member of the class thereby becomes entitled to enforce it;
 
 
 52
 "(2) several, and the object of the action is the adjudication of claims which do or may effect specific property involved in the action; or
 
 
 53
 "(3) several, and there is a common question of law or fact effecting the several rights and a common relief is sought." (Emphasis supplied.)
 
 
 54
 The word "May", as used in this rule, I think refers to the litigant, according him the option of bringing the class action, rather than to an unqualified discretion in the court to deny it. Of course, as in all other cases, the court has the duty to determine whether the facts alleged bring it within the provisions of the rule governing class actions.
 
 
 55
 I think the complaint does allege facts which bring it within the fair intendment of Rule 23. It states that the plaintiffs and hundreds of others, enjoying rights as riparian owners and lessees superior to those of the defendants also consisting of hundreds of other persons, known as appropriators, (each class being too numerous for inclusion in the action as filed) have been arbitrarily deprived of their lawful rights by the defendants, with resultant great harm and irreparable damage to plaintiffs in the use of their properties for growing crops and raising livestock; and that this condition can be remedied only through judicial declaration and enforcement of those rights. If they can prove these allegations on behalf of the class they seek to represent, since the rights all stem from the same or similar sources, including the charge that the utility of their properties is being destroyed by the same illegal acts committed jointly by the defendant class possessing inferior rights to that portion of the flow involved, to wit, the arbitrary taking of all the water from the river before it reaches plaintiffs' lands including that to which their class has a prior claim, then it would seem that a clearer case for the intervention of a court of justice to adjudicate and protect those rights could scarcely be imagined.
 
 
 56
 The fact that the 50 or more members of the association, along with many other individuals, specifically requested the two named plaintiffs to represent them is sufficient, I believe, to justify the conclusion that the procedure chosen will "fairly insure the adequate representation" of the class, in so far as numbers are concerned. Smith v. Swormstedt, 16 How. 288, 14 L.Ed. 942; Moore, Federal Practice (2d Ed.) Vol. 3, Par. 23.07 (4), p. 3432; Purcell v. Summers, D.C., 34 F.Supp. 421, reversed on other grounds, 4 Cir., 126 F.2d 390. Further, the allegations disclose (and they derive support from the affidavits which are not controverted) that the interests of all members of the class which plaintiffs seek to represent are the same, since they are all owners or lessees of property which was severed from the sovereign prior to March 19, 1889, and the relief sought is identical.
 
 
 57
 As stated by Professor Moore in his work on Federal Practice, Vol. 3, Par. 23.05, p. 3422: "Neither the multiplicity of parties, nor the expediency, nor the inconvenience of bringing parties before the court will, in themselves, justify the class suit", but rather "the circumstances surrounding the case" which "must be disclosed by a positive showing" in the allegations, supporting affidavits or proof on the part of those who seek relief in this form; that the trial court is in the best position to judge of those conditions and its decision "is usually considered final, unless there is abuse" of discretion, citing appropriate authorities. (Emphasis supplied.) What has been said earlier, I believe, is sufficient to disclose beyond question that complainants present a case by their pleadings and affidavits, entitling them to bring this class action. Although not binding on this court in a matter of procedure, the course pursued here has been approved by the Texas Court of Civil Appeals, in Hidalgo County Water Improvement District No. 2 v. Cameron County Water Control and Improvement District, 253 S.W.2d 294, error refused by the Supreme Court. See also Weeks v. Bareco Oil Co., 7 Cir., 125 F.2d 84; Rank v. Krug, D.C.Cal., 90 F.Supp. 773; Everglades Drainage League v. Napoleon B. Broward Drainage District, D.C.Fla., 253 F. 246, appeal dismissed 251 U.S. 567, 40 S.Ct. 219, 64 L.Ed. 418; Smith v. Swormstedt, supra; Purcell v. Summers, supra; Kolon and Rosenfield, "Contemporary Function of a Class Suit", 8 U. of Chicago Law Review 684. In Hidalgo County Water Improvement District No. 2 v. Cameron Water District, cited above, the court dealt with the exact problem presented here. After calling attention to the fact that in the same case it had denied a writ of prohibition sought therein by the defendants to set aside a temporary injunction granted by the trial court, see Tex.Civ.App., 250 S.W.2d 941, the Texas Court proceeded to review the law and jurisprudence both of Texas and the country generally, which included McKinney on Irrigation and Water Rights, Vol. 3, 2d Ed., Sec. 1532; 30 Am.Jur., "Irrigation", Sec. 15; and citing also a host of Texas cases as supporting the issuance of a temporary injunction in that case. It also stated that the trial court had spent the better part of two weeks in hearing the application for the writ to maintain the status quo until it could be tried on its merits, building up a record of 1196 pages. That opinion also stated that in 1948 "users along the Rio Grande voluntarily formed a Water Conservation Association to cope with the limited flow of the river by a self-imposed rationing among users"; that this "system substantially met the needs of the users for a long continuous period of time, and remained in operation until April, 1952, three days before this suit was initially filed * * *" on which date the rationing committee went out of existence when the users refused to abide by the rationing schedule. The recitals "in the decree [of the trial court in that case] revealed the long-standing status of water users and that status was continued in operation by the decree." It quoted extensively and with approval from the decree of the trial court:
 
 
 58
 "Due to increased consumption of said water in the Counties of Cameron and Hidalgo in recent years, and diminution of the flow of the Rio Grande due to construction of dams and reservoirs on Mexican and American tributaries of the Rio Grande, the actual flow of the Rio Grande at periods of highest consumption of said waters has been insufficient each year since 1948 to supply the needs of all water users entitled thereto, without some form of procedure for lawful distribution and control of diversions from the Rio Grande for such uses."
 
 The court then proceeded:
 
 59
 "Those findings by the trial court show that at all times prior to 1948 the river furnished ample water for everyone. Commencing about that time, a water famine was avoided by a valley-wide voluntary self-control of the supply. By such a means, there continued to be a water supply for all users. Not until shortly before the commencement of this suit did that situation change. The upper diverters abandoned the voluntary water apportionment and `used, much more than their respective reasonable share of the available American flow of the Rio Grande to the detriment of all others riparian owners having lower points of diversion from the stream'. From a status where everyone received some water, there arose a different status where some received all the water and others received none." The Texas appellate court concluded that this made it imperative that the trial court there should intervene to prevent abuses of the rights of some by others, since no other enforceable remedy existed. It took note of the fact that the trial court had appointed a master, as is requested here, to determine the names and properties of all of those interested on either side and provided a means for bringing all of them before it if their interests would be affected by an ultimate decision upon the merits.
 
 
 60
 In a well considered opinion on the question of what conditions entitle complainants to bring a class action, the Court of Appeals for the Seventh Circuit, in Weeks v. Bareco Oil Co., supra [125 F.2d 91], although involving an anti-trust suit, reviewed the law and took occasion to say what was necessary under Rule 23 in a proceeding of this kind:
 
 
 61
 "Whether plaintiffs meet the requirements of Rule 23 is the precise question we must answer. This rule calls for `one or more' plaintiffs. In further defining the phrase `one or more,' the Supreme Court, by this rule, said: `as will fairly insure the adequate representation of all.' This qualifying phrase deals not alone with the number of plaintiffs. It calls for plaintiffs who can insure the adequate representation of all the others. [Emphasis by the authority quoted.] The application of the rule to each case necessitates a study of the factual situation which is at the bottom of the asserted liability of defendants.
 
 
 62
 "In the instant case we have two plaintiffs suing for and on behalf of nine hundred. This, on its face, seems small, but nevertheless a suit may be welcomed and supported, in fact, by a large percentage of said nine hundred, although many would not care to start separate, individual suits. Others, because of fear of costs and any other good reason, may not favor the class suit. May it be said that the two, therefore, did insure an adequate representation of the others?" (Emphasis supplied.)
 
 
 63
 The author of that opinion then proceeded to cite and analyze many authorities on the subject. However, it found that the defendants had alleged, and supported by affidavits or other evidence, circumstances which made it impracticable to use the class action procedure, yet it announced: "Our conclusion is that dismissal would not be justified on the ground that plaintiffs are too few in number compared to the total number in the class." It pointed out that the defendants had submitted various forms of proof in support of the motion to dismiss which required it to be sustained; citing numerous authorities; but added: "Were there factual disputes, the court could have heard evidence and determined the conflict. As it now stands, the attack on plaintiffs' ability to insure adequate representation stands undisputed." The dismissal by the lower court was sustained, as I gather, mainly because of the failure of plaintiffs to offer any evidence to support the claim that they fairly represented all others in the same class.
 
 
 64
 Declaratory Relief.
 
 
 65
 Having concluded that the trial court had jurisdiction and that this is a proper class action as brought, I turn now to a consideration of whether the court below was correct in declining to entertain the suit as one for declaratory relief.
 
 
 66
 The Declaratory Judgments Act, 28 U.S.C. §§ 2201-2202, provides:
 
 
 67
 "In a case of actual controversy within its jurisdiction, * * * any court of the United States * * * may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. * * *
 
 
 68
 "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment." (Emphasis supplied.)
 
 
 69
 Rule 57 of Civil Procedure, implementing the quoted statute, states:
 
 
 70
 "The procedure for obtaining a declaratory judgment * * * shall be in accordance with these rules * * *. The existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate. * * *" (Emphasis supplied.)
 
 
 71
 The language of the statute clearly implies, and the cases so hold, that ordinarily the granting or denial of declaratory relief is discretionary with the trial judge;[1] but that discretion is reviewable on appeal, and the finding reversible if unsound.[2]
 
 
 72
 Of course, the statute itself requires that there be jurisdiction and an actual controversy between the litigants, and the court must find these to exist before its discretion can be exercised. When the statutory requirements are met, it is universally held that the Act, being remedial in nature, should be liberally construed;[3] however, there are several circumstances to be taken into consideration in the proper exercise of discretion. Two of these are present in every case: (1) Whether a declaratory judgment will clarify and settle the legal relations at issue, and (2) whether the declaration will terminate and afford relief from the uncertainty and controversy which gave rise to the proceeding.[4] In addition, since the procedure is equitable, it is necessary to examine the factual situation to determine if there is a more effective and appropriate remedy available, or if the declaration will unduly disturb the balance between the federal and state systems.[5] If inquiry convinces the court that the suit meets all of these tests, it should entertain the action.
 
 
 73
 I have found, and I believe correctly, that the court below had jurisdiction of both issues; and while there is some language in the memorandum opinion of the trial judge, as well as argument by appellees, to the contrary, I think it clear that there is an actual controversy between the parties to this litigation. Plaintiffs and their class contend that their rights to the waters of the Rio Grande are riparian, superior by Texas law to the rights of the defendants and their class. Defendants deny this contention, particularly the Maverick Water District, which claims to derive its authority directly from and that it is an instrumentality of the State. The declaration sought is the settlement of this controversy. True, plaintiffs seek other relief, coercive in nature, when they ask the court to take the waters of the river into custody and to set up machinery for their ultimate apportionment in times of shortage. That portion of the prayer is in reality a request that the court establish procedure for executing the declaratory judgment which it is asked to render. The real controversy is over the legal rights to the water, and those rights can be determined in a declaratory judgment; and as was said earlier, a more serious condition can hardly be imagined.
 
 
 74
 It is at this point that the majority finds justification for the trial court's dismissal of the suit. My brothers analyze the effect of a decree upon persons who are not parties to the present litigation; and finding that such persons would not be bound, they conclude that the declaration sought would not terminate the controversy. Although the effect of the decree is not entirely free from doubt, I am inclined to agree that persons not parties to the litigation would not be bound thereby. I agree also that as an abstract proposition of law the pure doctrine of stare decisis, would not apply to subsequent litigation between other persons on the same subject matter.
 
 
 75
 However, a declaration of the substantive rights involved here will certainly furnish persuasive judicial authority upon which future controversies can be based; and in the same court, the declaration of rights will certainly be binding in subsequent proceedings which are ancillary to the present litigation. See Moore, Federal Practice, Vol. 3 (2d Ed.), Par. 23.11(3), p. 3465 et seq.; Cyc. of Fed.Law and Procedure, 2d Ed., Sec. 2.16, p. 524, and authorities cited there; Id., 3d Ed., Sec. 2.429, p. 124 et seq., and authorities cited. Bence, as to the parties to this suit and ancillary proceedings, the adjudication sought will settle the issues and terminate the controversy to the same extent that any declaratory judgment does in any dispute. To be sure, the ultimate solution to the problem presented lies in one unified public plan of priority and distribution applicable to all persons claiming rights in the waters of the Rio Grande throughout its whole length; but there are private disputes lesser than, even though a part of, the over-all problem. This case presents such a private dispute, and a declaration of rights and priorities by the trial court will remove all doubt and settle the dispute at least as to all present and subsequent parties. I do not think it can be said that because no court is in a position to pass upon the rights of all persons using water from the river over its entire course, one having the power to do so in a lesser and urgent area should decline. Indeed, the absence of such a tribunal strengthens the argument for entertaining this action, for in relegating the litigants to the state courts, this Court complicates the problem by requiring, in effect, more suits than are necessary.
 
 
 76
 I also disagree with the conclusion of the majority that maintenance of this suit will necessarily create a situation incompatible with a proper federal-state relationship. This case does not seek an advisory interpretation of a public statute enacting state policy;[6] nor does it involve the validity of a state revenue measure;[7] nor, with deference to the majority, does it present the type of federal-state conflict illustrated in Public Service Commission of Utah v. Wycoff Co., supra, note 1. The latter case was, in effect, an attempt to have the federal court define and limit the jurisdiction of the state commission and enjoin any attempt by the state agency to regulate an operator licensed by the Interstate Commerce Commission.
 
 
 77
 However, in so far as this record shows, there is no state agency having control over the correlative rights of riparians and appropriators, nor are there any statutes which purport to distribute river waters among them in accordance with expressed state policy. In fact, according to the memorandum opinion of the trial judge and the arguments, state authorities have repeatedly failed in efforts to devise and establish any such control. As was said in Montezuma Canal Co. v. Smithville Canal Co., 218 U.S. 371, at page 385, 31 S.Ct. 67, at page 73, 54 L.Ed. 1074:
 
 
 78
 "But because it was within the legislative power to provide administrative machinery to supervise the common use of water in a flowing stream by those having a lawful right to appropriate the water of that stream for beneficial use, it does not result that the decree entered by the court below was in excess of its authority. On the contrary in view of the absence of legislative action on the subject, and of the necessity which manifestly existed for supervising the use of the stream by those having the right to take the water in accordance with the decree which, undoubtedly to that extent, the court was authorized to render, we think the action taken by the court did not transcend the bounds of judicial authority, and therefore is not justly amenable to the attack made upon it." (Emphasis supplied.)
 
 
 79
 The prayer for declaratory relief simply seeks to have the court adjudicate the validity and priority of the conflicting water rights under state law, and I can see nothing in such a prayer to differentiate this case from any other where jurisdiction is based upon diversity of citizenship and the court is required to follow state law.
 
 
 80
 I believe the difficulty arose from the trial court's failure to distinguish between the relief sought through adjudication of the substantive right of a superior claim to the water and the procedural means suggested for its enforcement. If the court should determine and declare that plaintiffs and their class do in fact have legal rights to the waters superior to those of defendants and their class, and it became necessary to seek enforcement, the court could then determine how this shall be done. However, once this main issue is settled, it seems not at all improbable that the affected members of the two classes could work out an amicable adjustment of the matter, as they had done before the litigation commenced in Hidalgo County Water Improvement District No. 2 v. Cameron County Water District, supra.
 
 
 81
 In the event, however, that no such agreement resulted, it may be noted that there is sound judicial authority for the appointment by a court of equity of a water master or commissioner, with duties and powers very similar to those outlined in plaintiffs' suggested procedure. See Montezuma Canal Co. v. Smithville Canal Co., supra. Moreover, in Hidalgo County Water Improvement District No. 2 v. Cameron County Water District, cited above, the Texas Court of Civil Appeals seems to have pointed the way by approving the precise procedure which plaintiffs suggest here. Further, it may be added that if plaintiffs should be found not entitled to the exact relief requested, the court could accord such as may be deemed appropriate. Rule 54(c); Bemis Bros. Bag Co. v. United States, 289 U.S. 28, 53 S.Ct. 454, 77 L.Ed. 1011; Hutches v. Renfroe, 5 Cir., 200 F.2d 337; Cohen v. Randall, 2 Cir., 137 F.2d 441. The nature and extent of the relief to be granted could be determined after trial on the merits.
 
 
 82
 I do not agree that the fact that the Rio Grande is an international boundary and the subject of treaties between the United States and Mexico requires a federal court to decline this suit. The Treaty of November 14, 1944, providing for the construction of dams and the control of water usage thereby, has been in effect for nearly ten years, and the plight of abutting landowners and lessees in this part of Texas has grown more acute. Little, if anything, has been done to ease their difficulties; and this court should not force them to await the construction of dams which are still in the planning stage. It is not improper to observe that if courts having the power to adjudicate some of the problems involved exercise that power toward finding a solution, perhaps the legislative and executive authorities (who alone can provide a total solution) will make concerted efforts to translate plans into action.
 
 
 83
 Neither do I think that the crowded condition of the docket is a sufficient reason for refusal to entertain the suit. We may take notice of the fact, as disclosed by the reports of the Administrative Office of the Federal Courts that in much of the nation there is congestion which causes undue delay. However, this is a problem for the legislative branch of the government and can be effectually remedied only by creating a sufficient number of judgeships to handle the business of the courts.
 
 
 84
 Venue.
 
 
 85
 The trial court conceded without deciding that the plaintiffs could bring this action in the Southern District of Texas. However, in its efforts to sustain the dismissal of the action, Maverick Water District re-urges here its position that the Southern District was not the proper venue. It argues that the real purpose of this suit was to stop its diversion of water from the Rio Grande, and that this is therefore a personal action against it. Thus, it says, the suit should have been brought in the Western District, its statutory domicile.
 
 
 86
 This contention, I believe, is unsound. In the first place, at least one of the defendants (McQuatters) was alleged to be a resident of the Southern District, and the Judicial Code provides that an action not of a local nature against defendants residing in different districts of the same state may be brought in any of said districts. 28 U.S.C.A. § 1392(a). Further, plaintiffs allege and defendants admit that this is a local action; and the authorities support this view. Texas Courts have declared that riparian rights to water are incorporeal heriditaments, appurtenances to the realty. See Magnolia Petroleum Co. v. Dodd, 125 Tex. 125, 81 S.W.2d 653; Zavala County Water Imp. District No. 3 v. Rogers, Tex. Civ.App., 145 S.W.2d 919; Motl v. Boyd, 116 Tex. 82, 286 S.W. 458. And a suit to adjudicate such rights is a local action. Albion-Idaho Land Co. v. Naf Irr. Co., 10 Cir., 97 F.2d 439; Hunter v. United States Dept. of Agriculture, D.C., 69 F. Supp. 377. It has also been held to be a suit to quiet title or to remove a cloud on the title to real estate. Rickey Land & Cattle Co. v. Miller & Lux, 9 Cir., 152 F. 11; Lakeside Irr. Co. v. Markham Irr. Co., 116 Tex. 65, 285 S.W. 593. A local action involving property in more than one district may be brought in any of said districts, 28 U.S.C.A. § 1392(b). I therefore conclude that this suit was properly brought in the Southern District of Texas.
 
 
 87
 Conclusion.
 
 
 88
 With respect to that portion of the complaint and its prayer for the appointment of a master or commissioner to ascertain the names of owners or lessees and the description and location of their properties to be affected by this suit, it would seem that, to that extent, the relief should be granted, if counsel for the respective sides, in an effort to save costs, cannot perform this service. If the latter course is pursued, the court below could order the Clerk to mimeograph and send out by registered mail copies of the complaint and of an order advising all of their rights to intervene and be heard, and fixing the time limit in which it must be done.
 
 
 89
 For the above reasons I must respectfully dissent from the refusal to entertain this action.
 
 
 
 Notes:
 
 
 [1]
 Brillhart v. Excess Ins. Co., 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620; Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407; Alabama State Fed. of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; Eccles v. Peoples Bank, 333 U.S. 426, 68 S.Ct. 641, 92 L.Ed. 784; Public Service Comm. of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L. Ed. 291; Samuel Goldwyn, Inc. v. United Artists, 3 Cir., 113 F.2d 703
 
 
 [2]
 Aetna Cas. & Surety Co. v. Quarles, 4 Cir., 92 F.2d 321; Samuel Goldwyn, Inc. v. United Artists, supra; Moore, Federal Practice, Vol. 6, p. 3030, Par. 57.08(2), and authorities there cited
 
 
 [3]
 Aetna Cas. & Surety Co. v. Quarles, supra, footnote 2; Ohio Cas. Ins. Co. v. Marr, 10 Cir., 98 F.2d 973; Mutual Life Ins. of New York v. Moyle, 4 Cir., 116 F.2d 434; Mississippi Power & Light Co. v. City of Jackson, 5 Cir., 116 F.2d 924; Dewey & Almy Chemical Co. v. American Anode, 3 Cir., 137 F.2d 68; Oil Workers Int. Union Local No. 463 v. Texoma Nat. Gas Co., 5 Cir., 146 F.2d 62
 
 
 [4]
 See Borchard, Declaratory Judgments, (2d Ed., 1941), p. 299; Aetna Cas. & Surety Co. v. Quarles, supra; Goldwyn, Inc. v. United Artists, supra, footnote 1; American Cas. Co. of Reading, Pa. v. Howard, 4 Cir., 173 F.2d 924
 
 
 [5]
 Employers' Liability Assurance Corp. v. Mitchell, 5 Cir., 211 F.2d 441; Maryland Cas. Co. v. Boyle Construction Co., Inc., 4 Cir., 123 F.2d 558; Chicago Metallic Mfg. Co. v. Edward Katzinger Co., 7 Cir., 123 F.2d 518. See also City of Chicago v. Fieldcrest Dairies, 316 U.S. 168, 62 S.Ct. 986, 86 L.Ed. 1355; Alabama State Fed. of Labor v. McAdory, 325 U.S. 450, 65 S.Ct. 1384, 89 L.Ed. 1725; Public Service Comm. of Utah v. Wycoff Co., 344 U.S. 237, 73 S.Ct. 236, 97 L.Ed. 291
 
 
 [6]
 Alabama State Fed. of Labor v. McAdory, supra, note 1
 
 
 [7]
 Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 63 S.Ct. 1070, 87 L.Ed. 1407